(Hamilton County Common Pleas.)
December, 1900.

IN THE MATTER OF THE APPEAL OF CHARLES B. ARNOLD.

(1). Section 2858, R. S., must be construed liberally, for the reason that it is a remedial and not a penal statute.

(2). The provision in said section requiring the reading of the delinquent personal tax list by the county commissioners is directory and not mandatory, and therefore its omission does not render invalid the remainder of said statute.

(3). The testimony adduced in the case at bar shows that the collection of said delinquent taxes was the result of the efforts of said delinquent tax collector, and that he was therefore, in accordance with his contract, entitled to his commissions.

(4). The question whether all, or only a part, of the delinquent tax list should be turned over to the tax collector, is one of discretion by the proper officials, and can not be reviewed by this court.

SPIEGEL, J.

This case is an appeal by Charles B. Arnold from the action of the board of county commissioners of this county disallowing his claim for $1,582.52 for commissions on the collection of delinquent personal taxes amounting to $6,330.08. From the evidence in the case the following facts appear:

On November 25, 1898, Tilden R. French, the county treasurer, requested of the board of county commissioners authority, as provided in the statutes, to appoint a special collector of delinquent chattel taxes, such authority to be in conformity with the previous resolutions of the board in so far as compensation and performance of duties were concerned. On November 26, 1898, the board passed the following resolution:

"Be and it is hereby resolved, that under the provisions of section 2858 of the Revised Statutes of Ohio, the county treasurer of Hamilton county, Ohio, is hereby authorized and empowered to employ a collector or collectors for the collection of delinquent personal taxes, such authority to apply only to personal taxes delinquent in any year or years other than a current tax year, which delinquent taxes shall appear on the auditor's supplement duplicate of delinquent personal taxes, and the compensation to be allowed such collector or collectors, including any or all expense incident to such collections, shall not exceed twenty-five per centum of the amount so collected and turned into the county treasury, such compensation to be paid from the county fund, upon approval by this board."

On November 29, 1898, the board of control of the county concurred in the aforesaid action of the commissioners.

On November 30, 1898, the county treasurer gave Mr. Arnold the following appointment:

"By virtue of a resolution passed by the board of county commissioners on November 26, 1898, and approved by the county board of control on November 29, 1898 (such resolution being in conformity with section 2858, Revised Statutes of Ohio), you are hereby appointed 'collector of delinquent chattel taxes' for this office, at the compensation provided in said resolution (namely, an amount equal to twenty-five per cent. of collections made by you and paid into the county treasury). Your employment is from this date, and during my term of office as county treasurer."

On December 18, 1898, the county treasurer sent the following notice to the board of county commissioners:

"Gentlemen: I have the honor to inform you that I have appointed Chas. B. Arnold to be collector of delinquent personal taxes for this office under authority provided in your resolution of November 26, 1898, and approved by the Hamilton county board of control November 29, 1898, and that his compensation is fixed at a sum equal to twenty-five (25) per cent of the collections made by him and paid into the county treasury."

At the time of the above appointment, the county treasurer gave to the appellant all the delinquent tax duplicates of personal taxes, and he proceeded in the performance of his duties as the special collector. From time to time, as collections were made by him and

bills rendered to the commissioners for his services, he was paid upon the allowance of the commissioners and board of control twenty-five per cent. of his total collections. No objection was ever made to any of the bills presented by him, until the one in question in this case for $1,581.52 was presented on May 12, 1900. This bill is for the collection of a number of items of delinquent chattel taxes, a detailed statement of which was afterwards made by the county treasurer upon the request of the commissioners.

The evidence shows that in the collection of the various items contained in the detailed statement the appellant rendered some specific service, either by his personal solicitation from the taxpayer or by letter, or through his agents; and that in the collection of the claim against the Covington & Cincinnati Bridge Company he had employed attorneys, and had brought an action in the common pleas court, and that he had collected the sum of $6,187.37 in said case, as shown by the entry made therein. A large amount of testimony was introduced to show what was done by the appellant and his attorneys in the preparation and prosecution of this case. It appears that in 1898 the city board of equalization, after an investigation and a hearing, added the sum of $213,300 to the original return of the bridge company of $120,000, making an aggregate of $333,300. Upon application by the bridge company for a rehearing before the board of supervisors as a board of revision in December, 1898, the board, after a hearing, reduced the above valuation by a sum of $18,900, leaving the tax valuation for 1898 at $314,400. From this action the bridge company in January, 1899, appealed to the state board, consisting of the governor, auditor and attorney general, and it remained there unacted upon for over a year. In January, 1900, the state board acted and ordered a remission of $119,200, but before this reduction was made the state board withdrew their action, and never afterwards disposed of the matter.

After the appeal was taken in January, 1899, the county officers, including the board of supervisors, the county solicitor and county auditor, claimed that the state board had no authority to make a reduction. In making up the duplicate in 1898, the auditor placed against the bridge company taxes on a valuation of $333,300. The taxes on this amount were not paid by the bridge company and became delinquent, and then collection was turned over to the appellant in accordance with the authority theretofore given to him. Thereupon he entered into a contract with his attorneys to bring actions for the collection of this amount, and also

of a large sum against the Cincinnati Street Railway Company, which was also in dispute. These actions were filed in December, 1899, and it appears that the counsel of the appellant were very diligent in pressing the opposing counsel for a hearing and disposition of the cases. Numerous conferences were held between attorneys on the question of pleadings and entries. The attorneys for the defendants were desirous of delay in order to secure some action from the state board, but the state board not acting, the matter was again brought before the board of supervisors in March, 1900, when it appears that an adjustment was attempted to be made by agreeing upon a valuation for 1899 as well as 1898. This action of the board was set up in the answer of the bridge company as a defense to the petition in the appellant's case. On May 2d, a final entry was made in this case, in which it was found and decreed by the court that the sum of $244,560 was the amount on which the bridge company should be taxed. The taxes on this amount were subsequently paid by the attorneys of the bridge company to the appellant and his attorneys, the difference being permitted by the county auditor, in accordance with the entry of the court.

The methods of the appellant in the transaction of his business and collection of delinquent taxes generally was fully explained by a large amount of testimony. It shows that he occupied part of the county treasurer's office and gave his entire time towards the collection of these delinquent taxes; that he employed agents and assistants in furtherance of this work; that he also employed attorneys in all the cases he prosecuted against delinquents in the various courts of the city and county; that his compensation as allowed under his contract included all expenses and stationery, office help, attorneys' fees, etc.

It appears from the testimony brought out by the defendant that the delinquent list for 1898 and prior years, with one or two possible exceptions, were not read or caused to be read by the county commissioners. And no additional authority was given to the appellant for the collection of delinquent taxes of 1898 other than that heretofore set forth and which was to extend throughout the term of Mr. Tilden R. French as county treasurer.

Two questions are raised by the county solicitors upon this state of facts:

First. Did Mr. Arnold have a legal contract for the collection of delinquent taxes? and, Second. If so, is Mr. Arnold entitled to compensation for the collection of the sum of $6,187.37, delinquent personal taxes charged against

the Covington & Cincinnati Bridge Company for the year 1898?

First. Section 2858 of the Revised Statutes empowers the county treasurer to employ one or more delinquent tax collectors, in the following language:

"Sec 2858. The county commissioners shall at their September session, annually, cause the list of persons delinquent in the payment on personal property to be publicly read; and they may at any time, if they deem the same necessary, authorize the treasurer to employ collectors to collect the same, or any part thereof, prescribing the compensation of such collectors, which shall be paid out of the county treasury."

Section 2858 was originally passed by the general assembly May 1, 1854 (52 O. L., 112), forming part of a number of sections making it the duty of the several county treasurers to take cognizance of the removal of delinquent tax payers to other counties of the state, and to notify treasurers of such counties of this fact, who thereupon became authorized to collect these taxes, with penalty, from such delinquent taxpayers and remit the amounts to the treasurers of the counties entitled to these taxes.

Section 5 of this act, being the original section 2858, reads as follows:

"Sec. 5. It shall be the duty of the several county commissioners in this state annually, at their March session, to cause the delinquent list of personal property to be publicly read on the second day of said session; and said commissioners may, at any time, direct the county treasurer to proceed to collect, in the manner prescribed in this act, any delinquent taxes due their county. It is further made the duty of county treasurers, county auditors, and county commissioners to examine the delinquent lists of the four years preceding the one for the year 1853, and if there shall be found charged thereon any delinquent taxes not paid, and which they believe can be collected, they shall proceed in the manner to collect the same as is provided for the collection of other delinquent taxes in this act, except there shall be added to said taxes no per centum, but an amount equal to the interest on these taxes from the time said taxes were due."

It will be noticed that all the sections of this act, which will be found in 4 Curwen, p. 2636, relate to delinquent taxpayers removed from their respective counties. The conclusion seems to be justified from the reading of section 5, directing the treasurer "to collect in the manner prescribed in this act," that the reading of the delinquent list of personal property was for the purpose of aiding the treasurer in discovering the residence of such delinquent taxpayers. This conclusion becomes almost irresistible when we find that the general assembly, on April 5, 1859, codified the entire subject of taxation in one act of 110 sections with different chapter headings, and placed this section 5, now numbered section 89, under the heading of "Non-resident personal tax" (4 Curwen, page 3335; 2 Swan & Critchfield, page 1468, Chap. 114, sec. 89); and when we further find that, irrespective of the reading of the delinquent list by the county commissioners, the county treasurer had power by distress or suit in the common pleas court to collect delinquent personal taxes of residents of his county, receiving therefor a commission of ten per cent., afterward reduced to five per cent. (See 3 Chase, page 1815, Chap. 852, secs. 18, 19, 20; 3 Curwen, page 2415, Chap. 1356, secs. 18, 19; 4 Curwen, page 3242, chap. 2000, sec. 4).

On March 20, 1866, the law under discussion was widened in its scope by including the collection of the whole as well as any portion "of delinquent personal taxes due the county," from residents as well as non-residents, and for this purpose the commissioners were empowered to authorize the treasurer to employ one local delinquent tax collector or as many as were considered necessary, experience undoubtedly having proved that the treasurers, with the means at their command, were unable to economically collect the delinquent personal taxes with advantage to the state. This revision is found in O. L., vol. 63, page 43 (Swan & Sayler, page 780), and reads as follows:

"An Act

"Supplemental to an act entitled 'An act for the assessment and taxation of all property in this state, and for levying taxes thereon according to its true value in money', passed April 5, 1859.

"Section 1. Be it enacted by the general assembly of the state of Ohio, that it shall be the duty of the several county commissioners in this state, semi-annually, at their first meeting after the return of the delinquent list of personal property, to cause the same to be read; and said commissioners may, at any time, direct said treasurer to proceed in the manner elsewhere provided in this act, to collect the whole or any portion of the delinquent taxes due their county. The said commissioners, if upon careful examination they are satisfied the said delinquent taxes, or any part thereof, can be more certainly and economically collected by the personal application and efforts of local collectors, may empower their county treasurer to employ such collectors, and such number thereof and for such compensation, to be paid out of the county treasury, as will, in the

opinion of said commissioners, insure the largest net proceeds from the collection of said delinquent taxes."

The final touch this law received was by the codification of our Revised Statutes in 1880, and it now reads as follows, under sectional numbering 2858:

"Sec. 2858. The county commissioners shall, at their September session, annually cause the list of persons delinquent in the payment on personal property to be publicly read; and they may, at any time, if they deem the same necessary, authorize the treasurer to employ collectors to collect the same, or any part thereof, prescribing the compensation of such collectors, which shall be paid out of the county treasury."

It may also be noticed here that in the interim, in 1870, the fee system of salaries for public officials of Hamilton county had been abolished, and the treasurer's percentage as an incentive for collecting delinquent taxes became part of the fee fund of the county.

I have thus called attention to the historical evolution of this law, in order that it may aid us in determining, before we examine its mandatory or directory features, whether this law calls for a strict or liberal construction.

For, if upon this statute alone depends the right of the treasurer to collect delinquent personal taxes, thus making it a penal law, then, upon the reasoning adduced by me in Mathers v. Bull (6 N. P., 45), its construction must be held to be strict, without recourse to the equitable rules of interpretation permitted to the court in the construction of remedial statutes, and the reading of the tax list, before any delinquent personal taxes can be collected, becomes mandatory. But we have seen that, irrespective of this statute, the trasurer is authorized by law to distrain or sue for delinquent personal taxes, and we have further seen that the order of the general assembly to the county commissioners to have the delinquent tax list read was originally passed to aid the treasurer in finding absent delinquent tax-payers. What, then, is the object of the law, as it now stands? We know what the old law was; we know that its operation has been extended to all the delinquent tax-payers of the county, and finally we find the remedy enacted by the general assembly, the appointment of assistants to the treasurer in collecting the whole of the delinquent taxes. It is the duty of the judges so to construe a public act as to suppress the mischief and advance the remedy. The act under discussion does not impose a penalty upon the tax-payer; other statutes have done that. This statute simply strives to remedy a public mischief, namely, the neglect of county treasurers, where the means at their command have not kept pace with the growth of population, to collect all the personal delinquent taxes, by giving them a remedy, whenever the county commissioners deem it necessary, in the appointment of local delinquent tax collectors. That such a statute is remedial in its nature, seems to be beyond question; that it was enacted pro bono publico, not for the benefit of the treasurer, but of the public treasury, must be apparent at first blush.

Remedial statutes are those, which, in brief, are made to correct defects in the existing law—for amendments of the law; those which have for their object the redress of some existing grievance, or the introduction of some regulation conducive to the public good. The law under discussion clearly falls under the third subdivision, if not also under the second and the first.

Such a statute must be construed largely and beneficially, so as to suppress the mischief and advance the remedy; a construction which leads to an absurdity will be rejected. As Judge Owen says, in Moore v. Given, 39 Ohio St., 663:

"That the law does not require vain, absurd or impossible things of men is one of its favorite maxims; and it is the plain duty of the courts, in the interpretation of a statute, unless restrained by the rigid and inflexible letter of it, to lean most strongly to that view which will avoid absurd consequences, injustice and even great inconveniences; for none of these can be presumed to have been within the legislative intent."

I shall now, by the light of the foregoing, consider the question whether the provision of section 2858, that the county commissioners shall, at their September session, annually, cause the list of persons delinquent in the payment on personal property to be publicly read, is mandatory, and thereby, if not strictly followed, render invalid every provision of section 2858, thus annulling the contract entered into with the appellant by the treasurer. A general rule, employed by the courts to distinguish directory from mandatory provisions, may be stated as follows: Where the provision is in affirmative words, and there are no negative words, and it relates to the time or manner of doing the acts which constitute the chief purpose of the law, or those incidental or subsidiary thereto, by an official person, the provision is usually treated as directory. Mr. Sutherland, in "Statutory Construction" (page 575), lays down the following rule:

"Unless a fair consideration of a statute, directing the mode of proceeding of public affairs, shows that the legislature intended compliance with the

provision in relation thereto to be essential to the validity of the proceeding, it is to be regarded as directory merely.

"Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey which, the rights of those interested will not be prejudiced, are not necessarily to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it will still be sufficient, if that which is done accomplishes the substantial purposes of the statute."

Chief-Justice Sharswood says:

"Where the words are affirmative, and relate to the manner in which power or jurisdiction vested in a public officer or body is to be exercised, and not to the limits of the power or jurisdiction itself, they may be and often have been construed to be directory; but negative words which go to the power or jurisdiction have never, that I am aware of, been brought within the category."

The same rule is laid down by our federal supreme court, Justice Field delivering the opinion (French v. Edwards, 80 U. S., 506):

"Statutory requirements intended for the guide of officers in the conduct of business devolved upon them and designed to secure order, system and dispatch in proceedings, and by disregard of which the rights of parties interested can not be injuriously affected, are not usually regarded as mandatory unless accompanied by negative words, importing that the acts required shall not be done in any other manner or time than that designated."

"And", as Lord Campbell says, "it is the duty of course of justice to try to get at the real intention of the legislature by carefully attending to the whole scope of the statute to be construed."

Applying these canons of construction to the statute under consideration, and having found, as above stated, the old law, the mischief and the remedy, the mischief being not the omission of reading the delinquent list by the commissioners, but the necessitiy of a closer collection of the delinquent personal taxes, a duty which was frequently neglected by county treasurers by reason of the inadequate means at their command, and the remedy being the appointment of local tax collectors to assist the treasurer in the discharge of this duty, I can only find that the reading of the delinquent tax list is a directory duty imposed upon the commissioners, which ought to be obeyed by them, and which has been obeyed this year, but a disregard of which does not invalidate the entire statute. Any other conclusion would lead to the absurd consequence that the collector of

delinquent taxes due the state heretofore has been illegal, and possibly rendering the treasurers liable for repayment to persons who have only paid their just dues to the state, a conclusion directly contrary to the rule laid down by our supreme court, "that it is the plain duty of the court, in the interpretation of a statute, to lean most strongly to that view which will avoid asburd consequences, injustice and cause great inconvenience; for none of these can be presumed to have been within the legislative intent."

The further objection raised by counsel for the appellee, ancillary to the foregoing, that the compensation of the appellant was not fixed by the county commissioners, but by he treasurer, is not borne out by the examination of Exhibit A, containing the record of his appointment.

I come now to the consideration of the second question raised by counsel for the appellee, that the appellant is not entitled to compensation for the collection of the sum of $6,187.37, delinquent personal taxes charged against the Covington & Cincinnati Bridge Company for the year 1898, because he rendered no services in collecting said taxes. This is purely a question of fact. I have already reviewed the testimony as it was submitted to me. The facts, as thus shown, prove that it was due to the services rendered by the appellant that the personal taxes assessed against the Covington & Cincinnati Bridge Company, delinquent for almost two years, were finally paid, and that this fact was clearly recognized by the officers of the county and their counsel, as well as by the bridge company and their counsel, in using the suit brought by the delinquent tax collector as a basis for a settlement of the claims, in having a final judgment entered in that suit, endorsed by the counsel for the bridge company, the counsel for the county and the counsel for the collector. To say the least, these entries by counsel for the county commissioners contain an admission on the part of the appellee, that the services were rendered by the appellant, which were productive of payment of the delinquent taxes. But, irrespective of this admission the testimony shows that in the ordinary discharge of his duties, collecting delinqnent taxes, both small and large amounts, appellant rendered personal services in the collection of such taxes, and that in the matter of delinquent taxes due from the bridge company to the county, he employed counsel, filed suit and collected the taxes due the county, less the amount remitted by the county authorities. It is true that he received twenty-five per cent. commission for his services rendered in this case, the same as in all collections

made by him, but as this amount is in accordance with the contract legally entered into with him by the county treasurer, the court can only find that the appellant is entitled to the relief prayed for, and judgment must be entered in his favor.

The question whether the treasurer could not have filed a suit against the bridge company through the county solicitors, instead of following the custom of his office, in turning over the entire delinquent list, large and small, to the delinquent tax collector, is one that lies within the discretion of each county treasurer, and is not subject to review by this court.

Judgment in favor of the appellant.

C. C. Benedict and F. F. Dinsmore, for Arnold.

Wilson, Cosgrave & Jones, for the County Commissioners.